Young, J.
Plaintiff appeals the judgment of the Court of Appeals regarding several issues involving the Petition Clause of the First Amendment. We reverse that judgment and reinstate the judgment of the trial court.
I. FACTS AND PROCEDURAL HISTORY
Plaintiff, a construction company, submitted a bid to perform a masonry contract for the city of Wayne. Plaintiff was the low bidder for the contract. Pursuant to the Wayne City Charter, the city council was obligated to award the contract to the lowest qualified bidder unless it determined that the public interest would be better served by accepting a higher bid. Wayne City Charter, § 13.1(d).[1]
*725 Defendant Mark King,[2] a Bricklayers & Allied Craftsmen Union field representative with fifteen years experience as a mason, discovered that plaintiff, a nonunion employer, was the low bidder for the masonry contract. He thereafter set out to dissuade the city council from awarding the contract to plaintiff. In this effort, defendant presented privately to the city manager, and to the city council in public session, deceptive photographs of plaintiffs masonry work that suggested plaintiffs workmanship was of poor quality. He also represented that plaintiff might not be able to perform the contract in a timely manner. After plaintiff attempted to respond to these allegations during the public meeting of the council, defendant made reference to the fact that plaintiff was a nonunion contractor that did not pay the prevailing wage to its employees.
Because of its concerns regarding the allegations defendant made against plaintiff, the city council referred plaintiffs bid to the city administration for further review. Following that review, the city council awarded the masonry contract to the second lowest bidder, stating in its resolution that “the Council had concerns as to the low bidder because of claims made about faulty workmanship and because of concerns about noncompliance with the payment of prevailing wages and fringe benefits . . . .”
Having lost the contract bid, plaintiff filed a complaint against defendant for defamation and tortious interference with business expectations. Applying an ordinary negligence standard, the trial court found *726 that defendant’s statements regarding the quality of plaintiff’s workmanship and plaintiff’s prospective ability to complete the job on time were false and defamatory, but that plaintiff failed to meet its burden of proving that defendant’s prevailing wage statements were false. Regarding the defamation claim, the trial court rejected defendant’s argument that a qualified privilege existed because the statements were made while petitioning the government, reasoning that the qualified privilege “actual malice” standard was inapplicable because plaintiff was a private, not a public, figure. Having found defendant’s statements regarding plaintiff’s workmanship and prospective ability to timely complete the project to be false, defamatory, and unprivileged, the trial court held defendant liable for defamation under MCL 600.2911(7).[3]
In addition, the trial court concluded that the defamation formed the foundation for tortious interference with business expectations. The court declined to protect defendant from liability from this claim on the basis of the principles of the Noerr-Pennington doctrine,[4] which protect petitioning activity from antitrust violations when the petition concerns legislative *727 or regulatory issues. The court concluded that defendant’s statements were not made in an attempt to urge legislative or regulatory policy decisions. In essence, the trial court applied what the Court of Appeals and the parties have termed a “market participant” exception to the Noerr-Pennington doctrine.[5]
The trial court awarded plaintiff damages of $57,888, the loss of expected profits under the contract for both the claim of defamation and the claim of tortious interference with business expectations. Attorney fees of $104,286.95 and interest of $26,044.51 were also awarded to plaintiff.
Defendant appealed, and the Court of Appeals affirmed in part,[6] reversed in part, and remanded for further proceedings. The Court of Appeals concluded that where petitioning activity is involved, the “actual malice” standard for defamation claims established in New York Times Co v Sullivan, 376 US 254; 84 S Ct 710; 11 L Ed 2d 686 (1964), applies regardless whether plaintiff is a private or public figure. Because *728 the trial court only issued a finding that defendant’s defamatory statements were negligent, the Court of Appeals remanded the case to the trial court for a determination whether defendant’s conduct constituted “actual malice.”
Regarding the claim of tortious interference with business expectations, the Court of Appeals held that “ ‘the Noerr-Pennington doctrine is a principle of constitutional law that bars litigation arising from injuries received as a consequence of First Amendment petitioning activity, regardless of the underlying cause of action asserted by the plaintiffs.’ ” 245 Mich App 730, quoting Azzar v Primebank, FSB, 198 Mich App 512, 517; 499 NW2d 793 (1993). Relying on Azzar, the Court of Appeals concluded that defamation is actionable on the basis of petition activity only where the petitioning was actually a “sham.” Further, the panel reversed the trial court’s application of the “market participant” exception to the Noerr-Pennington doctrine, writing that “[i]t is not obvious why different rights, duties, or immunities should apply when one is lobbying for political action in the form of outright commercial patronage, as opposed to legislation or enforcement actions.” 245 Mich App 736.
We granted leave to appeal. 466 Mich 859 (2002).
H. STANDARD OF REVIEW
Plaintiff’s appeal raises three issues of federal constitutional law[7] regarding the Petition Clause: first, *729 whether a private-figure plaintiff must prove “actual malice” in a defamation claim against a defendant whose contested statements were made while petitioning the government; second, considering the Noerr-Pennington doctrine, whether a cause of action exists for tortious interference with business expectations as the result of statements made by a defendant while petitioning the government; and third, whether there exists a “market participant” exception to the Noerr-Pennington doctrine.
The protections provided by the First Amendment, including the Petition Clause, have been extended to the states by the Fourteenth Amendment. Whitehill v Elkins, 389 US 54, 57; 88 S Ct 184; 19 L Ed 2d 228 (1967). We review de novo issues of constitutional law. McDougall v Schanz, 461 Mich 15, 24; 597 NW2d 148 (1999).
HI. DISCUSSION
A. DEFAMATION
The first issue presented is whether the private-figure and public-figure dichotomy embodied in defamation case law on freedom of speech and freedom of the press from the United States Supreme Court extends to defamation involving the right to petition. The United States Supreme Court has never been squarely presented with, or decided, this question.[8]
*730 However, we are guided by the general Petition Clause defamation concepts announced in McDonald v Smith, 472 US 479; 105 S Ct 2787; 86 L Ed 2d 384 (1985). In rejecting an argument that absolute immunity attaches to the right to petition, the McDonald Court wrote:
To accept petitioner’s claim of absolute immunity would elevate the Petition Clause to special First Amendment status. The Petition Clause, however, was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble. These First Amendment rights are inseparable and there is no sound basis for granting greater constitutional protection to statements made in a petition to the President than other First Amendment expressions. [McDonald, supra at 485 (internal citations omitted; emphasis added).]
By this reasoning, at least regarding the constitutional law of defamation immunity, the Court has made clear that it considers the Petition Clause as offering no greater protection than that of the Free Speech Clause and the Free Press Clause. In so concluding, we believe the Court has strongly signaled its view that all the Free Speech Clause and Free Press Clause defamation doctrine developed in the past *731 forty years is to be imported without change to constitutional adjudications arising under the Petition Clause.[9] Accordingly, an analysis of relevant United States Supreme Court case law on free speech and free press defamation is essential. Production Steel Strip Corp v Detroit, 390 Mich 508, 514; 213 NW2d 419 (1973).
Under long-settled constitutional principles concerning the First Amendment rights of freedom of speech and freedom of the press, a public-figure plaintiff must establish that a defendant made defamatory statements wdth “actual malice” in order to prevail in a defamation action. New York Times, supra (establishing the “actual malice” standard for liability for defamation of public officials); Curtis Publishing Co v Butts, 388 US 130; 87 S Ct 1975; 18 L Ed 2d 1094 (1967) (extending the “actual malice” standard to public figures). “Actual malice” exists when the defendant knowingly makes a false statement or makes a false statement in reckless disregard of the truth. New York Times, supra at 280. In other words, a defamation defendant is entitled to a qualified privilege in the form of a heightened “actual malice” standard required to be met by a public-figure plaintiff.
In contrast, a defamation defendant whose alleged defamatory statements pertained to a private figure receives no such constitutional protection under case law on freedom of speech and freedom of the press. Rather, the states are left to decide for themselves whether a private-figure plaintiff must establish more *732 than ordinary negligence as a predicate for recovery for defamation. Gertz v Robert Welch, Inc, 418 US 323, 346-348; 94 S Ct 2997; 41 L Ed 2d 789 (1974).[10] In Rouch v Enquirer & News of Battle Creek, 427 Mich 157; 398 NW2d 245 (1986), this Court held that a defamation defendant is not entitled to a qualified privilege in a case involving a private-figure plaintiff under Michigan law, and thus declined to extend greater protection than constitutionally required under Gertz.[11] More important, the Michigan Legislature codified the Rouch holding in 1988, statutorily providing that defamation of a private figure requires only a showing of negligence, not actual malice. MCL 600.2911(7).[12]
Because the United States Supreme Court has concluded that the right to petition should be accorded no greater protection than the rights to free speech and free press, McDonald, supra at 485, we conclude that the private-figure and public-figure dichotomy that applies to defamation claims involving the Free Speech Clause and the Free Press Clause, Gertz, supra at 342-347, also applies to defamation claims *733 involving the Petition Clause. Accordingly, we reverse the judgment of the Court of Appeals that the “actual malice” qualified immunity standard of New York Times applies in Petition Clause defamation cases regardless whether the plaintiff is a private or public figure. Extending Gertz in the manner suggested by McDonald, a defamation defendant whose statements about a private figure are made while petitioning the government is not constitutionally entitled to a qualified immunity in the form of the heightened “actual malice” standard. Because MCL 600.2911(7) provides no greater protection for such defendants, the Court of Appeals erred. The trial court’s decision concerning plaintiff’s defamation claim is reinstated.
B. TORTIOUS INTERFERENCE WITH BUSINESS EXPECTATIONS
Although we maintain reservations about the judgment of the Court of Appeals regarding the claim of tortious interference with business expectations, concerning the Noerr-Pennington doctrine and any “market participant” exception to that doctrine, we need not review those issues here.
The trial court awarded damages for lost business profits under alternative theories of defamation and tortious interference with business expectations based on defamation. Attorney fees were awarded pursuant to MCL 600.2911(7), which pertains to defamation actions. In light of our reversal of the judgment, of the Court of Appeals regarding defamation and the resulting reinstatement of the trial court’s decision on that claim, the full judgment amount awarded by the trial court to plaintiff is restored.
*734 Accordingly, our disposition of the remaining federal constitutional issues raised by the parties and decided by the Court of Appeals will not alter the ultimate resolution of this case. This Court will not unnecessarily decide constitutional issues, People v Riley, 465 Mich 442, 447; 636 NW2d 514 (2001), and it is an undisputed principle of judicial review that questions of constitutionality should not be decided if the case may be disposed of on other grounds. MacLean v Michigan State Bd of Control for Vocational Ed, 294 Mich 45, 50; 292 NW 662 (1940).
For these reasons, we decline to address the federal constitutional issues presented concerning the Noerr-Pennington doctrine and the suggested “market participant” exception to that doctrine. Although we question the analysis of the Court of Appeals regarding those issues, our resolution of the case makes it unnecessary for us to address them.
CONCLUSION
The Court of Appeals incorrectly concluded that the private-figure and public-figure dichotomy present in freedom of speech and freedom of the press, case law is inapplicable to defamation claims involving the right to petition. In McDonald, supra at 485, the United States Supreme Court stated that “there is no sound basis for granting greater constitutional protection to statements made in a petition . . . than other First Amendment expressions.” Accordingly, it is clear that the constitutional rules regarding defamation claims involving the Free Speech Clause and the Free Press Clause are applicable to defamation claims involving the Petition Clause.
*735 The private-figure and public-figure dichotomy being one of the constitutional rules, we hold that private-figure defamation plaintiffs are only constitutionally required to prove ordinary negligence in order to establish defamation in cases involving the right to petition. No qualified immunity is constitutionally provided to defamation defendants whose statements about private figures are made while petitioning the government. Because MCL 600.2911(7) does not provide greater protection for defamation defendants than constitutionally required, ordinary negligence is the standard required to be met by private-figure defamation plaintiffs in cases involving the Petition Clause.
For these reasons, we reverse and vacate the judgment of the Court of Appeals and reinstate the judgment of the trial court.
Corrigan, C.J., and Weaver, Taylor, and Markman, JJ., concurred with Young, J.

 Section 13.1(d) specifically provides:
Purchases shall be made from the lowest qualified bidder meeting specifications, unless the Council shall determine that the public interest will be better served by accepting a higher bid, sales shall be made to the bidder whose bid is most advantageous to the City. In any case where a bid, other than the lowest, is accepted, the Council shall set forth its reasons therefor in its resolution accepting such bid.

 Because the trial court found that King was acting in his capacity as a union representative and thus on behalf of the defendant union during the events at issue, we will refer to both defendants in the singular.

 MCL 600.2911(7) provides:
An action for libel or slander shall not be brought based upon a communication involving a private individual unless the defamatory falsehood concerns the private individual and was published negligently. Recovery under this provision shall be limited to economic damages including attorney fees.

 The Noerr-Pennington doctrine is derived from two United States Supreme Court cases pertaining to the Petition Clause and antitrust laws: Eastern Railroad Presidents Conference v Noerr Motor Freight, Inc, 365 US 127; 81 S Ct 523; 5 L Ed 2d 464 (1961), and United Mine Workers of America v Pennington, 381 US 657; 85 S Ct 1585; 14 L Ed 2d 626 (1965).

 The “market participant” exception to the Noerr-Pennington doctrine, adopted in some jurisdictions, but rejected in others, generally provides that a petitioner is not insulated from liability for defamation while petitioning the government where the governmental entity is acting as a market participant, as opposed to making policy. 245 Mich App 722, 733-734; 631 NW2d 42 (2001), citing George R Whitten, Jr, Inc v Paddock Pool Builders, Inc, 424 F2d 25 (CA 1, 1970) (adopting an exception to NoerrPennington where the government is performing a proprietary function); Greenwood Utilities Comm v Mississippi Power Co, 751 F2d 1484, 1505 n 14 (CA 5, 1985) (expressly rejecting Whitten).

 The trial court also rejected defendant’s argument that plaintiff’s claims are preempted by the National Labor Relations Act, 29 USC 151 et seq. The Court of Appeals affirmed the trial court’s decision regarding this federal preemption issue. Defendant has not cross-appealed on this issue or moved to have it added as an issue of dispute before this Court. Accordingly, we will not address that portion of the judgment of the Court of Appeals.

 Const 1963, art 1, § 3 provides that “[t]he people have the right peaceably to assemble, to consult for the common good, to instruct their representatives and to petition the government for redress of grievances.” However, the parties have neither rested their arguments on this state constitutional right nor suggested that this provision is interpreted any *729 differently from the Petition Clause of the First Amendment. Accordingly, our consideration is limited to the federal constitutional issues presented.

 While in this opinion we conclude that McDonald v Smith, 472 US 479; 105 S Ct 2787; 86 L Ed 2d 384 (1985), provides sufficient guidance to resolve the pending issues, we believe the Supreme Court has never directly addressed whether the private-figure and public-figure doctrine of free speech and free press defamation law announced in Gertz v Robert *730 Welch, Inc, 418 US 323; 94 S Ct 2997; 41 L Ed 2d 789 (1974), discussed below, applies in a petition case.
The Court had no cause to discuss the Gerlz doctrine in McDonald, inasmuch as the McDonald plaintiff was a public figure and, thus, defendant was constitutionally entitled to the qualified immunity “actual malice” standard of New York Times, as a result of the McDonald Court holding that the Petition Clause provided no greater defamation protection than the Free Speech Clause and the Free Press Clause. In addition, under the state common law of North Carolina, which was at issue in McDonald, “actual malice” was the governing standard for both private-figure and public-figure defamation actions. As a result, the fact pattern in McDonald did not invite or require a discussion of the private-figure and public-figure dichotomy.

 In interpreting the federal constitution, state courts are not privileged to provide greater protections or restrictions when the Supreme Court of the United States has refrained from doing so. Arkansas v Sullivan, 532 US 769, 772; 121 S Ct 1876; 149 L Ed 2d 994 (2001).

 Gertz specifically held that “so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual.” Id. at 347. Accordingly, defamation against a private figure still requires that fault be established. In addition, private-figure plaintiffs may only recover actual damages under a negligence standard for defamation. In order to recover any presumed or punitive damages, Gertz requires proof of actual malice. Id. at 350.

 Where the alleged defamation concerns both a private figure and a matter of private concern, the burden of proving that the statement was not false rests with the defendant. However, where the statements are of public concern, the private-figure plaintiff bears the burden of proving falsity. Rouch, supra at 181, citing Philadelphia Newspapers, Inc v Hepps, 475 US 767; 106 S Ct 1558; 89 L Ed 2d 783 (1986). In this case, plaintiff proved falsity at trial.

 See n 3.