*126 YOUNG, J.
(concurring in part). I concur in the result reached by the lead opinion, but do so on a narrow ground: given the failed and inadequate attempts at providing respondent notice in this case, the trial court clearly erred[1] by using respondent’s failure to participate in the child protective proceedings against Laurie Kops as grounds for terminating his parental rights. I concur with the following rationale from the lead opinion that supports my conclusion:
[A]lthough respondent had actual notice of A.’s removal after the fact and received notice of one dispositional proceeding, respondent received no notice of the ongoing proceedings, the services and evaluations available from [the Department of Human Services (DHS)], or the fact that his parental rights could be at stake in a neglect case against Kops. In other words, although he had actual notice of A.’s removal and the allegations against Kops, by no means did he receive actual notice of the full nature and import of the proceedings with regard to his own rights.[2]
As a result of the lack of adequate notice, respondent was clearly deprived of numerous statutorily required services to ensure that he could properly parent his child. Yet in terminating his parental rights, the trial court held respondent to the standard that would have applied had he actually received such services. Accordingly, I concur in the result reached in the lead opinion.
I. CLEAR ERROR
The failure of the trial court and the DHS to provide adequate notice to respondent was the root of the trial court’s erroneous ruling that petitioner had presented *127 clear and convincing evidence in support of the grounds cited in the termination petition — respondent’s criminal history and inability to provide proper care and custody within a reasonable time. Respondent was not on notice that he was statutorily entitled to services and evaluation by the DHS and, therefore, was never the subject of a DHS investigation regarding his suitability to parent A.[3] As a result, there is a “hole” in the evidence on which the trial court based its termination decision. Although there is record evidence that respondent has been convicted of various criminal offenses, the DHS was statutorily obligated to investigate further to determine whether respondent could provide a safe custodial environment for A.[4] Moreover, if the trial court and the DHS had provided timely notice, there is a possibility that respondent’s inability to provide proper care and custody within a reasonable time could have been rectified through services.[5]
It is equally true that the trial court clearly erred by basing the termination on respondent’s failure to provide child support. Although the DHS was empowered under the statute to seek child support from respondent while A. was in foster care,[6] it failed to do so. Respondent was never asked, let alone ordered, to pay child support for A. and, therefore, was not on notice that his failure to do so could result in the termination of his parental rights.
*128 Although I agree with the result reached by my colleagues, I must disassociate myself from the alternative rationales employed in the lead opinion that sweep well beyond the limited legal issue presented in this case. To resolve this matter, this Court need only consider whether the trial court committed clear error by terminating respondent’s parental rights on the basis of his nonparticipation, prior criminal record, and failure to pay child support.
II. POINTS OF DEPARTURE FROM THE LEAD OPINION
One alternative rationale that I find insupportable is the lead opinion’s attempt to create substantive rights in a parent from federal statutes that do nothing more than impose a duty on the state. Title IV-E of the Social Security Act, 42 USC 670 et seq., was enacted under Congress’s spending power[7] and provides federal funding for states that adopt a foster care plan that complies with various requirements.[8] If a state violates those requirements, it will be required to return a portion of its federal funding.[9] As noted in the lead opinion, our Legislature has enacted several statutes mirroring the federal act.[10]
The lengthy analysis of the Title IV-E requirements provided in the lead opinion would be useful background information for intracourt training purposes in an effort to bring our system into conformance with the federal law to avoid having to return federal dollars. However, the United States Supreme Court has not addressed the question of which provisions of Title IV-E *129 might create substantive rights that might be enforced by a parent,[11] and that question has been the topic of much debate among lower federal courts.[12] Given that the provenance for using Title IV-E to convey substantive rights is uncertain, this Court should not advance a *130 novel interpretation of federal law, especially when this case can easily and entirely be resolved on narrow state law grounds.[13] Accordingly, I disagree with part IV of the lead opinion.
I also disagree with the lead opinion’s extensive reliance on the current version of the DHS Childrens Foster Care Manual. This internal operating manual does not have the force of law, or even of an administrative rule. Moreover, this Court should not judge the conduct of the trial court and DHS workers on the basis of standards that were not imposed until after the events relevant to this case.
Finally, I disagree with the lead opinion’s consideration of the potential constitutional implications of the trial court’s and the DHS’s statutory and court rule violations. This Court has repeatedly held that it should not decide a case on constitutional grounds if the issues can be fully and adequately resolved on statutory grounds.[14] The numerous statutory and court rule vio *131 lations, and the trial court’s subsequent use of its own violations as grounds for terminating respondent’s parental rights, are sufficiently egregious to require appellate relief. We should delve no further than the clear error analysis, which completely resolves this matter.
HATHAWAY, J., did not participate in the decision of this case in order to avoid unnecessary delay to the parties in a case considered by the Court before she assumed office by following the practice of previous justices in transition and participating only in those cases for which her vote would be result-determinative.

 I also concur with the lead opinion’s reliance on In re Trejo, 462 Mich 341; 612 NW2d 407 (2000), for the proper standards of review employed in termination cases.

 Ante at 113.

 See MCL 712A.18f(1), (3), and (4); MCR 3.965(D)(1).

 See MCL 712A.18Í.

 There are situations in which the DHS is not required to provide services to the parent and may seek termination at the initial disposi-tional hearing, including “[a]bandonment of a young child.” MCL 722.638(l)(a)(¿) and (2). A parent abandons, or “deserts,” his child if he is absent for more than 91 days and has not sought custody of his child. MCL 712A.19b(3)(a)(¿¿). The petition in this case did not allege abandonment.

 MCL 552.451b; MCL 722.3(2).

 US Const, art I, § 8, cl 1.

 42 USC 670; 42 USC 671; 46 CFR 1356.21; 45 CFR 1356.50.

 45 CFR 1356.71(h) and (j).

 Ante at 103-104.

 In Suter v Artist M, 503 US 347, 350; 112 S Ct 1360; 118 L Ed 2d 1 (1992), the United States Supreme Court determined that 42 USC 671(a)(15) did not create a private cause of action for children affected hy the state’s actions. Congress reacted by enacting 42 USC 1320a-2, which provides:
In an action brought to enforce a provision of the Social Security Act [42 USC 301 et seg.], such provision is not to be deemed unenforceable because of its inclusion in a section of the Act requiring a State plan or specifying the required contents of a State plan. This section is not intended to limit or expand the grounds for determining the availability of private actions to enforce State plan requirements other than by overturning any such grounds applied in Suter v. Artist M ... but not applied in prior Supreme Court decisions respecting such enforceability; provided, however, that this section is not intended to alter the holding in Suter v. Artist M that [42 USC 671(a)(lB)\ is not enforceable in a private right of action. [Emphasis added.]
In the wake of Congress’s enactment of § 1320a-2, the United States Supreme Court has not considered whether any provision of Title IV-E creates a private cause of action. The Court has only held that courts must examine Title IV-D of the Social Security Act provision by provision to determine whether the challenged provision gives rise to an enforceable, individual right. Blessing v Freestone, 520 US 329, 342; 117 S Ct 1353; 137 L Ed 2d 569 (1997).

 See Arrington v Helms, 438 F3d 1336, 1342-1347 (CA 11, 2006) (42 USC 675 does not create a private cause of action); 31 Foster Children v Bush, 329 F3d 1255,1268-1274 (CA 11,2003) (42 USC 675[5][D] and [E] do not create private cause of action); Johnson v Holmes, 377 F Supp 2d 1084, 1092-1101 (D NM, 2004) (42 USC 671[a][9] does not create a private cause of action), rev’d in part on other grounds 455 F3d 1133 (CA 10, 2006); Carson v Heineman, 240 FED 456, 532-544 (D Neb, 2007) (42 USC 671[a][l], [10], [11], [15], [16], and [22], 42 USC 672, and 42 USC 675[1], [4], and [5][B], [D], and [E] do not create private causes of action); ASW v Oregon, 424 F3d 970, 975-979 (CA 9, 2005) (42 USC 671[a][12] and 42 USC 673[a][3] create private causes of action); California Alliance of Child & Family Services v Mleriby, 459 F Supp 2d 919, 922-925 (ND Cal, 2006) (42 USC 675[4][A] creates a private cause of action); Kenny A v Perdue, 218 *130 FRD 277, 290-294 (ND Ga, 2003) (42 USC 622[b][10], 42 USC 671[a][10], [16], and [22], and 42 USC 675[1] and [5][D]and [E] create private causes of action).

 It is the duty of the Legislature to enact statutes providing procedural rights consistent with Title IV-E. A parent may challenge the trial court’s failure to comply with state statutes that have been enacted as part of a Title IV-E compliance plan. However, the “remedy” for the state’s failure to enact statutes consistent with Title IV-E is given to the federal government in the form of “disallowing funding,” not to the parent.
Contrary to the statement in the lead opinion, ante at 106-107,1 do not imply that this Court lacks authority to consider questions of federal law that have yet to be decisively resolved by the federal courts when this is necessary for the resolution of a case properly before this Court. However, I do challenge the lead opinion’s unnecessary and lengthy analysis of Title IV-E when this case can be entirely resolved — both substantively and procedurally — on state law grounds.

 See J & J Constr Co v Bricklayers & Allied Craftsmen, Local 1, 468 Mich 722, 734; 664 NW2d 728 (2003), citing People v Riley, 465 Mich 442, *131 447; 636 NW2d 514 (2001), and MacLean v Michigan State Bd of Control for Vocational Ed, 294 Mich 45, 50; 292 NW 662 (1940); Delta Charter Twp v Dinolfo, 419 Mich 253, 264 n 4; 351 NW2d 831 (1984).