*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re GUARDIANSHIP OF DRRR.

FOR PUBLICATION
June 17, 2025
1:50 PM

No. 372523
Macomb Probate Court
Family Division
LC No. 2024-247892-GM

Before: WALLACE, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

In this case involving guardianship, DRRR's guardian (appellant) appeals as of right the order denying appellant's motion for Special Immigrant Juvenile (SIJ) determinations. We vacate the August 5, 2024 order of the probate court and exercise our discretion to make each finding pertinent to DRRR's SIJ status by a preponderance of the evidence, and find that DRRR was born on May 25, 2006, in Quetzaltenango, Guatemala, she is under 21 years old, and is an unmarried minor under the laws of the State of Michigan. We further find the following: (1) that DRRR was declared dependent on the State of Michigan, Macomb County Probate Court by virtue of guardianship proceedings, resulting in the appointment of her sister as her full legal guardian; (2) that DRRR's reunification with her father is not viable due to neglect and abandonment, and reunification with her mother is not viable due to neglect; and (3) that DRRR's best interests would not be served by returning to her country of origin, Guatemala.

## I. BACKGROUND AND PROCEDURAL HISTORY

Appellant is DRRR's older sister. They share the same parents. Appellant filed a petition on January 18, 2024, seeking to become DRRR's full guardian, as well as a request for the suspension of fees due to indigency. When the petition was filed, DRRR was 17 years old and still a minor. DRRR was born in Guatemala and came to the United States to live with appellant in October 2021. Appellant was provided a temporary power of attorney for DRRR by the Committee for Refugees and Immigrants (CRI). While in Guatemala, DRRR lived in poverty and frequently missed meals. She could not focus on her studies because she was working with her

-1-

mother every day of the week. Their father was abusive to their mother and abandoned the family when DRRR was one or two years of age. Their mother was aware of the petition for guardianship.

On February 13, 2024, appellant filed a request for an interpreter, which the court granted the same day.[1] After a hearing on April 16, 2024, the probate court found that (1) DRRR was unmarried; (2) DRRR was not living with a parent when the petition was filed; and (3) DRRR needed a guardian because her parent permitted her to reside with appellant, but did not provide appellant with legal authority over DRRR's care and maintenance. The court granted the petition and appointed appellant as DRRR's full guardian.

At the April 16, 2024 hearing, appellant's attorney asked the court to also rule on her motion for special determinations on the issue of SIJ classification status; however, the court declined, indicating the motion could not be filed until after a determination was made on the petition for guardianship.[2] Later that day, the court accepted the filing of appellant's motion to make factual findings regarding DRRR's SIJ classification and a hearing was scheduled for May 20, 2024, which was only five days before DRRR's 18th birthday.

The May 20, 2024 hearing on appellant's motion began as scheduled at 9:12 a.m. The court noted that there was no translator present and that appellant had not submitted the court's form for requesting a translator for the hearing.[3] Although a certified foreign language translator was not present at the hearing, appellant's attorney had a person capable of translating present at the hearing, as permitted under MCR 1.111(F)(2), yet the trial court refused to accept her as a translator because she was not certified by the State Court Administrator's Office (SCAO). Because the hearing had been noticed to occur that morning, the trial court gave appellant's counsel until 11:30 a.m. to procure a certified interpreter. Appellant's attorney then procured a SCAO-certified interpreter who could only appear via videoconferencing because she was located two hours away from the courthouse. Counsel informed the court's clerk, but was subsequently told that the court would only allow an in-person interpreter.[4] Counsel then contacted additional

---

[1] The register of actions reflects that counsel for appellant submitted requests for an interpreter on the following dates, all of which were granted the same day they were requested: February 13, 2024; March 14, 2024; June 6, 2024; and July 11, 2024. As discussed below, after the court granted appellant's request for an interpreter in the February 13, 2024 order, there was no need for appellant to make additional requests for an interpreter. The court was obligated by MCR 1.111(F)(1) to provide an interpreter until the proceedings were concluded.

[2] Based upon the lower court record, it appears that appellant's counsel attempted to file the motion in March, so that it could be heard immediately following the April 16, 2024 hearing, but the filing was rejected by the court.

[3] Appellant reasonably expected that the court would provide a Spanish language interpreter for DRRR at this hearing because the court had provided an interpreter for prior hearings.

[4] In an affidavit submitted to the trial court, appellant's attorney claims to have witnessed the court, earlier in the day, conduct a hearing on another case in which an interpreter appeared by

interpreters and procured an interpreter who could be present for the hearing in-person at 11:30 a.m. However, at approximately 11:27 a.m., appellant's attorney was informed, without further explanation, that the court had adjourned the hearing to June 17, 2024, which was after DRRR's 18th birthday. The court's register of actions indicates that the June 17, 2024 hearing was subsequently adjourned to August 5, 2024.[5]

At the hearing on August 5, 2024, the trial court denied appellant's motion, claiming it lacked jurisdiction over DRRR because she was 18 years old. Appellant moved for reconsideration on August 26, 2024, which the trial court denied. This appeal followed.

## II. CONSTITUTIONAL CHALLENGES

Appellant argues the trial court's delay in the SIJ hearing violated DRRR's procedural due process and equal protection rights. However, appellant raised the procedural due process challenge in her motion for reconsideration and her violation of equal protection challenge for the first time on appeal, making them unpreserved. See *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009) ("Where an issue is first presented in a motion for reconsideration, it is not properly preserved."), see also *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020) ("[I]ssue preservation requirements only impose a general prohibition against raising an issue for the first time on appeal.").

"In civil cases, Michigan follows 'the raise or waive rule of appellate review.' " *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023), quoting *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). "Under that rule, litigants must preserve an issue for appellate review." *Tolas Oil & Gas Exploration Co*, 347 Mich App at 289. "If a litigant does not raise an issue in the trial court, this Court has no obligation to consider the issue." *Id*. Because appellant failed to preserve her constitutional challenges, they are waived, and we will not address them. *Id*. In declining to consider these challenges we are also cognizant of the longstanding tenet that this Court will not unnecessarily decide constitutional issues, particularly when the case can be resolved on other grounds. See *J & J Const Co v Bricklayers & Allied Craftsmen, Local 1*, 468 Mich 722, 734; 664 NW2d 728 (2003).

---

videoconference. Counsel suggests that her client was treated differently than the person utilizing the interpreter in that case.

[5] Judge Sandra A. Harrison presided over this case in the lower court, but the record indicates that Judge Antonio Viviano, a visiting judge, presided over the June 17, 2024 hearing. Judge Viviano appeared reluctant to address the merits of the issue, believing that the matter would benefit from Judge Harrison's familiarity with the case. This may explain the court's decision to adjourn the matter to a later date. In any event, no further explanation for the adjournment is apparent from the record.

## III. APPOINTMENT OF A FOREIGN LANGUAGE INTERPRETER

### A. STANDARD OF REVIEW

We review a trial court's decision whether to appoint an interpreter for an abuse of discretion. *People v Warren (After Remand)*, 200 Mich App 586, 591; 504 NW2d 907 (1993). A court abuses its discretion when its decision falls "outside the range of reasonable and principled outcomes." *Sanders v McLaren-Macomb*, 323 Mich App 254, 264; 916 NW2d 305 (2018) (quotation marks and citation omitted). Additionally, we review de novo the interpretation of statutes and court rules. *Can IV Packard Square, LLC v Packard Square, LLC*, 328 Mich App 656, 661; 939 NW2d 454 (2019).

### B. ANALYSIS

Appellant argues that the trial court erred when it failed to allow the hearing on May 20, 2024 to proceed with an interpreter offered by appellant. We agree.

The appointment of foreign language interpreters is governed by MCR 1.111, which states, in pertinent part:

> (B) Appointment of a Foreign Language Interpreter.
>
> (1) If a person requests a foreign language interpreter and the court determines such services are necessary for the person to meaningfully participate in the case or court proceeding, or on the court's own determination that foreign language interpreter services are necessary for a person to meaningfully participate in the case or court proceeding, the court shall appoint a foreign language interpreter for that person if the person is a witness testifying in a civil or criminal case or court proceeding or is a party.
>
> * * *
>
> (F) Appointment of Foreign Language Interpreters.
>
> (1) When the court appoints a foreign language interpreter under subrule (B)(1), the court shall appoint a certified foreign language interpreter whenever practicable. If a certified foreign language interpreter is not reasonably available, and after considering the gravity of the proceedings and whether the matter should be rescheduled, the court may appoint a qualified foreign language interpreter who meets the qualifications in (A)(6).[6]

---

[6] Under MCR 1.111(A)(6), a qualified foreign language interpreter is defined as:

> (a) A person who provides interpretation services, provided that the person has:

(2) If neither a certified foreign language interpreter nor a qualified foreign language interpreter is reasonably available, and after considering the gravity of the proceeding and whether the matter should be rescheduled, the court may appoint a person who the court determines through voir dire to be capable of conveying the intent and content of the speaker's words sufficiently to allow the court to conduct the proceeding without prejudice to the limited English proficient person. [MCR 1.111(B)(1), (F)(1), and (F)(2).]

Our court has previously addressed the critical role that foreign language interpreters play in facilitating meaningful access to justice for those whose English skills are lacking. *See People v Hieu Van Hoang*, 328 Mich App 45; 935 NW2d 396 (2019). In *Hoang*, the trial court appointed a foreign language interpreter at the initiation of the criminal proceedings against the defendant, who spoke Vietnamese. *Id*. at 51. The appointment extended to all court proceedings. *Id*. It also required the interpreter to be present for defendant's pretrial preparations with counsel. *Id*. On appeal, defendant argued that the court denied him his Sixth Amendment right to counsel by denying his request that an interpreter be *physically* present during pretrial discussions with counsel. *Id*. at 54.

This Court ultimately rejected Hoang's claim of constitutional deficiency and concluded that the trial court complied with MCR 1.111, as well as MCL 775.19a, which specifically applies to the appointment of interpreters in criminal proceedings. *Hoang*, 328 Mich App at 58. In doing so, our Court recognized the necessity of interpreters in the administration of justice:

[A] party shall receive interpretation services as necessary for the person "to meaningfully participate" in any hearing, trial, etc. Fundamental to meaningful participation in preliminary examinations, plea hearings, and trial is the ability to engage in pretrial preparation with trial counsel. Therefore, we conclude that the broad standard set forth under MCR 1.111(B)(1) mandates interpretation services

---

(i) registered with the State Court Administrative Office; and

(ii) passed the consecutive portion of a foreign language interpreter test administered by the State Court Administrative Office or a similar state or federal test approved by the state court administrator (if testing exists for the language), and is actively engaged in becoming certified; and

(iii) met the requirements established by the state court administrator for this interpreter classification; and

(iv) been determined by the court after voir dire to be competent to provide interpretation services for the proceeding in which the interpreter is providing services[.]

As MCR 1.111(F)(1) suggests, a "qualified foreign language interpreter" differs from a "certified foreign language interpreter," see MCR 1.111(A)(4).

during pretrial preparations when necessary for a defendant to meaningfully participate in the case or court proceeding. [*Id*.]

In reaching this conclusion, this Court also noted that, once a litigant or counsel requests an interpreter and the court agrees to appoint one, the trial court "has an ongoing obligation under MCR 1.111(B)(1) to ensure that Hoang received such interpretation services as were necessary to 'meaningfully participate in the case or court proceeding . . . .' " *Id*. at 57.

Unlike in *Hoang*, the trial court in this matter required appellant to make multiple requests for an interpreter, in violation of MCR 1.111(B)(1). Neither MCR 1.111 nor the court's language access plan[7] require litigants to request an interpreter prior to each proceeding if the court has already determined that the litigant needs an interpreter.

The court also violated MCR 1.111(F)(2) by refusing to allow appellant to use a qualified foreign language interpreter at the May 20, 2024 hearing. As discussed above, when the May 2024 hearing first began, the court noted that a SCAO-certified translator was not present. Counsel informed the court that, while a SCAO-certified translator was not present, a translator who met the requirements of MCR 1.111(F)(2) was present. However, the trial court said it would only allow a translator to appear if they were SCAO-certified. The court gave counsel until 11:30 a.m. to come back with a SCAO-certified interpreter who could appear in person. Counsel was able to procure one, but three minutes before 11:30 a.m., the court refused to recall the case without any explanation, thereby necessitating another hearing on June 17, 2024, and an additional hearing on August 5, 2024.

Had the court adhered to MCR 1.111(F)(2), it would have found that the proposed interpreter had been speaking Spanish since she was five years old, that she had a minor degree in Spanish from Michigan State University, and that she had been employed in various positions that required her to translate English and Spanish in the United States and abroad. The proposed interpreter was precisely the type of person referenced in MCR 1.111(F)(2), i.e., a person "capable of conveying the intent and content of the speaker's words sufficiently to allow the court to conduct" the hearing without prejudice to DRRR, who was not proficient in English. This error was compounded with the court's separate error in requiring appellant to repeatedly request an interpreter, in violation of MCR 1.111(B)(1), despite having previously determined that an interpreter was necessary for DRRR to meaningfully participate in the case.[8]

In sum, we conclude that the court made several critical errors, resulting in DRRR being denied meaningful access to justice: First, while the court had previously provided DRRR with an interpreter at initial proceedings, it erred by failing to abide by its continuing obligation, under

---

[7] Macomb County Probate Court, *Interpreters* <https://www.macombgov.org/departments/probate-court/interpreters> (accessed June 6, 2025).

[8] We note that the sum of the trial court's rationale for asserting that it could prevent use of a non-certified interpreter was that requiring a certified foreign language interpreter was "the procedure" and simply "how we run things here", but those comments fall short of valid reasons for requiring a certified foreign language interpreter.

MCR 1.111(B)(1), to provide DRRR with an interpreter at all subsequent court proceedings. Second, the court erred when it failed to comply with MCR 1.111(F)(2) by refusing to voir dire or otherwise permit DRRR to use the qualified interpreter whom counsel brought to the April 16, 2024 hearing. Instead, the court refused to hear the matter at its May 20, 2024, 9:00 a.m. docket, even though DRRR's counsel procured a qualified interpreter who could attend the proceedings remotely, and inexplicably refused to resume the proceedings at 11:30 a.m., even though the court continued the matter over from 9 a.m. to 11:30 a.m. Additionally, as further discussed below, the trial court did not make the remaining factual findings with respect to DRRR's SIJ determinations, instead choosing to adjourn the hearing, even though DRRR would turn 18 years old before the next available probate court hearing date.

## IV. SIJ DETERMINATION

Appellant requests that this Court make the factual determinations for DRRR's SIJ classification pursuant to MCR 7.216(A)(7) and *In re Velasquez*, 344 Mich App 118, 127; 998 NW2d 898 (2022).[9] Because the record provides the necessary evidence and because it promotes the interests of justice to do so, we will make the predicate factual findings pertinent to DRRR's SIJ status.

## A. STANDARDS OF REVIEW

"We review for an abuse of discretion a probate court's dispositional rulings and review for clear error the factual findings underlying its decision." *Id*. at 127. " 'Questions of law, including statutory interpretation, are reviewed de novo on appeal.' " *In re LFOC*, 319 Mich App 476, 480; 901 NW2d 906 (2017), quoting *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 116; 839 NW2d 223 (2013). To the extent it is relevant, "[j]urisdiction is a question of law that is reviewed de novo." *City of Riverview v Sibley Limestone*, 270 Mich App 627, 636; 716 NW2d 615 (2006).

## B. ANALYSIS

As we will describe in further detail below, "[t]he Immigration and Nationality Act of 1990 'established SIJ status as a path for resident immigrant children to achieve permanent residency in the United States.' " *In re Velasquez*, 344 Mich App at 128. Specifically, " '8 USC 1101(a)(27)(J) and 8 CFR 204.11 (2022) afford undocumented children, under the jurisdiction of a juvenile court, the ability to petition for special immigrant juvenile status in order to obtain lawful permanent residence in the United States.' " *Id*. at 128-129. That process requires that the state court make certain factual findings regarding the juvenile's SIJ status.

In light of the probate court's error in failing to proceed with the hearing to which appellant was entitled, see Part III above, and because the record is sufficient and it promotes the interests of justice to do so, we grant appellant's request to make the predicate factual findings regarding

---

[9] MCR 7.216(A) provides that this Court "may, at any time, in addition to its general powers, in its discretion, and on the terms it deems just . . . (7) enter any judgment or order or grant further or different relief as the case may require[.]"

DRRR's SIJ classification pursuant to MCR 7.216(A)(7) and *In re Velasquez*, 344 Mich App at 128-129.

In *In re Velasquez*, this Court explained the process for obtaining SIJ status as follows:

The Immigration and Nationality Act of 1990 established SIJ status as a path for resident immigrant children to achieve permanent residency in the United States. In short, 8 USC 1101(a)(27)(J) and 8 CFR 204.11 (2022) afford undocumented children, under the jurisdiction of a juvenile court, the ability to petition for special immigrant juvenile status in order to obtain lawful permanent residence in the United States.

There is a two-step process for obtaining SIJ status, which entails a unique hybrid procedure that directs the collaboration of state and federal systems. First, the state court makes predicate factual findings pertinent to the juvenile's SIJ status. The state court must find that the individual who seeks SIJ status is under the age of 21, unmarried, and (1) dependent on the juvenile court, (2) cannot viably be reunified with one or both of their parents because of neglect, abandonment, or a similar basis found under state law, and (3) the juvenile's best interests would not be served by returning to their country of origin. The findings made by the state court only relate to matters of child welfare, a subject traditionally left to the jurisdiction of the states, and are made according to state law. The federal statute places no restriction on what is an appropriate proceeding or how these SIJ factual findings should be made. The only limitation is that the court entering the findings fit the federal definition of a juvenile court. However, the state court is not to engage in an immigration analysis or decision. . . . Although the juvenile court determines whether the evidence supports the findings, the final decision regarding SIJ status rests with the federal government. . . . After the state court makes the predicate findings, the juvenile applies to the [United States Citizenship and Immigrations Services] for SIJ status. The USCIS engages in a much broader inquiry than state courts, and makes the ultimate decision as to whether or not the juvenile's application for SIJ status should be granted. [*In re Velasquez*, 344 Mich App at 128-129 (alterations in original; quotation marks and citations omitted; emphasis added).]

In *In re Velasquez*, the trial court granted the petitioner's guardianship petition, but it denied the motion for SIJ determinations. *Id*. at 125-126. Specifically, the trial court denied the motion for SIJ determinations because the minor's mother did not have proper notice of the proceedings and could not refute the testimony provided indicating that she abused the minor. *Id*. at 126-127. This Court made the factual findings for the SIJ classification pursuant to MCR 7.216(A)(7) and stated:

We further conclude that the probate court abused its discretion by failing to make such findings. Moreover, because the record established that it is in [the minor's] best interests to remain in the United States, rather than return to Guatemala, we exercise our discretion to make those findings instead of remanding to the probate court. [*Id*. at 145-146.]

-8-

On the basis of the record in that case, this Court found that the actions of the minor's mother in *Velasquez* constituted neglect and abuse as defined by Michigan law and that the record only supported a finding that reunification was not possible (the court also noted that the minor's father was deceased). *Id*. at 125-126, 139. Among the support for the finding of neglect was the fact that the minor had very little food and water in Guatemala, suggesting his mother had not provided adequate food. *Id*. at 139. This Court also found that, for the purposes of SIJ-status findings, a court may apply the Child Custody Act factors, some combination of the Adoption Code and Child Custody Act factors, or a unique set of factors developed by the trial court. *Id*. at 145. We held that the trial court abused its discretion by not making such findings. *Id*. We further found that it was in the minor's best interests to remain in the United States, rather than return to Guatemala, because of the neglect and abuse he suffered by his mother. *Id*. at 146. Finally, we noted that the juvenile court's special findings are limited to child welfare determinations and the court is not to engage in an immigration analysis or decision. *Id*. at 129, 141.

We now turn to the facts of a similar case recently decided by this Court, *In re Guardianship of RH*, unpublished per curiam opinion of the Court of Appeals, issued April 22, 2025 (Docket No. 372584).[10] The minor in *In re Guardianship of RH* was also 17 years old when his guardian was appointed, after which his guardian applied for special findings to allow him to apply for SIJ status for RH with USCIS. *Id*. at 2. A hearing was held and the probate court took the matter under advisement. *Id*. Two days after RH turned 18 years old, the court granted the petition in part, finding that RH was 18 years old, was physically present in the United States, and was the subject of a juvenile court order. *Id*. The court denied the motion in all other respects, refusing to make findings on the remaining issues. *Id*.

On appeal, this Court cited to *In re Velasquez*, 344 Mich App at 135, for the proposition that a preponderance of the evidence standard applied to the case because the SIJ statute does not state the applicable standard of proof to be applied for factual findings. *In re Guardianship of RH*, unpub op at 3. Concerning the second and third factors of *In re Velasquez*, this Court found that the probate court abused its discretion by not making special factual findings on those factors, which were pertinent to RH's SIJ status. *Id*. at 6. This Court found by a preponderance of the evidence that RH's reunification with his father and stepmother was not viable due to abuse under MCL 722.622(g) and MCL 722.602(1)(b) where he had been struck about seven times monthly by his father, who was encouraged by his stepmother, and neglect under MCL 722.622(k) and 722.602(d) where RH had been neglected by his father and stepmother who had not given him adequate food and clothing, and had forced him to work in dangerous conditions without personally receiving any pay. *Id*. at 8. This Court also found that, whether using the child custody factors, adoptions factors, or a combination of the factors, the record supported a finding that it was not in RH's best interests to return to his country of origin. *Id*. at 10. In support of that finding, we noted that RH had been sent to a farm to work in his country of origin, where he worked long hours instead of attending school, and again noted that he had been abused and neglected there. *Id*. Conversely, RH was being taken care of in the United States by the appellant in that case who

---

[10] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Kennard v Liberty Mut Ins Co*, 341 Mich App 47, 53 n 2; 988 NW2d 797 (2022) (quotation marks and citation omitted).

-9-

was encouraging him to attend high school (and then college) instead of simply working, all of which was in stark contrast to the situation in his home country. *Id.*

In the present case, similar to *In re Guardianship of RH*, appellant has provided evidence that certain factual determinations were made by the probate court, which determined that DRRR was an unmarried minor, i.e., under the age of 21, and was declared a ward by virtue of the guardianship proceedings in the probate court, but the court did not make any findings on the remaining factors.[11] Similar to the ward in *In re Guardianship of RH*, DRRR was not provided with adequate food or clothing in her country of origin, missed multiple meals per week, and was required to work with her mother every day without receiving compensation. Also similar to the ward in *In re Guardianship of RH*, DRRR provided evidence that her care provider in the United States, her older sister, could afford to provide her with all of her basic needs, including food, clothing, transportation for school, and medical care.

Based on the complete record before us, we find by a preponderance of the evidence that DRRR's reunification with her father and mother was not viable due to abandonment and neglect by her father and neglect by her mother. The record supports the fact that DRRR's father completely abandoned her when she was less than three years old, leaving her in the care of her poverty-stricken mother in Guatemala. The record also supports the fact that DRRR's mother failed to provide her with adequate food and clothing, which constitutes neglect under MCL 722.622(k) and 722.602(d). See *In re Velasquez*, 344 Mich App at 128. We also find by a preponderance of the evidence that DRRR's best interests would not be served by returning to her country of origin, Guatemala. The record established that DRRR was required to work with her mother every day of the week in Guatemala, without personally receiving compensation, preventing her from performing the ordinary tasks of a student, such as studying and furthering her education. As previously noted, she was also not provided with adequate food and clothing in her country of origin. In contrast, the record demonstrates that, in the United States, DRRR's sister provides her food, clothing, and medical care, and facilitates her desire to pursue her education. The option between her country of origin and the United States presents a stark contrast. Accordingly, "[w]hether using the child custody factors, adoption factors, or a combination of factors," the record supports our finding that it is not in DRRR's best interests to return to Guatemala. See *In re Velasquez*, 344 Mich App at 146-147. Instead, it is in her bests interests to remain in appellant's custody in the United States.

---

[11] The factual determinations made in *In re Guardianship of RH* were made in the special interests hearing in that case, while those determinations were made in the guardianship hearing in the present case; however, that fact is not relevant to our decision in this matter.

-10-

## IV. CONCLUSION

Vacated and remanded for entry of this Court's special findings regarding DRRR's SIJ status. We do not retain jurisdiction.

/s/ Randy J. Wallace
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett