In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-1952

PEDRO DIAZ,

*Plaintiff-Appellant*,

*v.*

MALCOLM DAVIDSON, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 1:08-cv-1280 — **Joe Billy McDade**, *Judge*.

SUBMITTED MAY 26, 2015 — DECIDED AUGUST 20, 2015

Before POSNER, ROVNER, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff complains that while he was an inmate of the Pontiac state prison in Illinois the defendants (prison guards, prison grievance officers, the warden, the assistant warden, a "correctional major" at the prison, who is responsible for ensuring the safety and security of the prison, and the director of the Illinois Department of Corrections) refused to equip him with gloves and a hat when he exercised in his outdoor cell in the prison yard in

very cold winter weather. According to medical evidence, he needed the exercise to prevent muscles in his back from atrophying because of arthritis, and without gloves and a hat to protect him from intense cold he could not exercise adequately; in particular he could not do chin ups, which he needed for his back—there was a chin-up bar in his outdoor cell (it was the only piece of exercise equipment in the cell) but it was too cold to grasp tightly in very cold weather. His indoor cell was warm enough but tiny—too small for him to be able to do the exercise he needed to do for his back. He claims that the denial of adequate exercise, aggravating his back condition, constituted cruel and unusual punishment in violation of federal law.

The refusal to allow him to wear gloves and a hat was pursuant to a policy that the prison justified on the ground that "offenders in the past have used hats and gloves as a tool for assaulting staff and offenders by placing feces inside the gloves or stocking cap" and "then swing[ing] the hat or gloves in a circular motion to create enough force to fling the feces into a staff member or offender from a distance," and that "the gloves or hat can also be used by offenders to hide dangerous contraband." The plaintiff in discovery asked for incident reports of inmates who had used hats or gloves as weapons but was told that because the database of incident reports is searchable only by date of report, the plaintiff's demand was too burdensome to comply with. The district judge agreed.

Prison officials who claim that inmates must be denied exercise that they need have to be able to back up the claim. See, e.g., *Turley v. Rednour*, 729 F.3d 645, 652 (7th Cir. 2013); *Pearson v. Ramos*, 237 F.3d 881, 885 (7th Cir. 2001); cf.

*Chandler v. Crosby*, 379 F.3d 1278, 1295 (11th Cir. 2004). It is difficult to believe that Pontiac prison has no searchable records of inmates' assaults on guards and other prisoners and of their use of hats or gloves to conceal contraband. But if indeed it has no searchable records, this should alter rather than extinguish the plaintiff's right to discovery; in response to the plaintiff's request for evidence to support the defendants' denial of medically needed exercise rights, the defendants should at least be required to present testimony by prison personnel documenting the use of gloves and hats by prisoners as weapons. Failure to respond to a plaintiff's reasonable discovery request was held in *Bryant v. City of Chicago*, 746 F.3d 239, 242–43 (7th Cir. 2014), to be reversible error. For all we know the alleged prisoner misconduct is so rare that the possibility of it could not justify the denial of gloves and a hat to the plaintiff, for whom they are medical needs.

The denial of gloves seems a more serious concern than denial of a hat, for which ear muffs might be an adequate alternative—and whoever heard of ear muffs as weapons? But gloves might well be needed to grip a cold object (the chin-up bar), though just gloves that protect the surface of the palm and fingers, and a backless glove would do that job without being usable to contain or hurl any unpleasant substance. We can't imagine on what ground the prison could object to providing Diaz with a backless glove.

But although the record compiled in the district court suggests that the plaintiff's federal rights may have been violated—see, e.g., *Lopez v. Smith*, 203 F.3d 1122, 1132–33 (9th Cir. 2000) (en banc); *Turley v. Rednour*, *supra*, 729 F.3d at 652; *Delaney v. DeTella*, 256 F.3d 679, 683–84 (7th Cir. 2001)—his suit must fail because he does not allege that the failure to

provide him with a hat and gloves reflected indifference on the part of the defendants to his need for those items. "[I]n a case like this, an inmate must allege actual knowledge of impending harm easily preventable." *Id*. As far as appears, the defendant guards gave him what they were required by the prison's policy to give him in the way of clothing when he exercised outdoors in cold weather without realizing, or being irresponsible in failing to realize, that he needed gloves and a hat to do the specific exercises that he needed to do for his back. As for the warden, his knowledge of Diaz's problem, so far as the record reveals, was extremely limited. The warden received only one pertinent grievance from Diaz, which complained that on one occasion he'd been left outdoors without a hat and gloves for two hours. There was no suggestion that this was other than an isolated failure to equip him properly for the cold.

The grievance officers were in the same position as the district judge: not receiving allegations indicative of a systematic failure to provide Diaz with the protective clothing that he needed, they had no basis for inferring misconduct by the guards or the warden, and thus were doing their job in not acting on the grievance. See *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). There are no allegations of deliberate indifference by the other defendants, either.

AFFIRMED

Judge Hamilton concurs in the judgment for the reasons given by the district court.