In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1151

KENNETH OGUREK,

*Plaintiff-Appellant,*

*v.*

JEFFREY GABOR,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:13-CV-01423-JES-TSH — **James E. Shadid**, *Chief Judge.*

SUBMITTED JUNE 15, 2016 — DECIDED JUNE 27, 2016

Before WOOD, *Chief Judge*, and POSNER and FLAUM, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff, Kenneth Ogurek, a prisoner in Illinois's Pontiac Correctional Center, seeks damages under 42 U.S.C. § 1983 from Jeffrey Gabor, one of the prison's security investigators, who the plaintiff claims violated the First Amendment by charging him with a disciplinary infraction in retaliation for Ogurek's having complained about Gabor to the warden. The district judge grant-

ed summary judgment in favor of the defendant on the ground that Ogurek had presented no evidence contradicting Gabor's denial that his charging Ogurek with an infraction was motivated by Ogurek's complaint to the warden.

In a fight with another inmate Ogurek had received cuts requiring stitches, and he was charged (not by Gabor) with a disciplinary infraction. He says he told Gabor that he wanted to charge the inmate, who he said had started the fight, with assault; also that items of personal property had been stolen from his cell while he was in segregation, where he'd been placed after the fight. He wanted Gabor to investigate both the fight and the theft, and when ten days elapsed with no response he complained to the warden, who forwarded the complaint to Gabor—who according to Ogurek berated him for complaining to the warden and told him that after watching a security video of Ogurek's fight with the other inmate he had determined that Ogurek *had* started it. When Ogurek denied this, Gabor filed a disciplinary report against him for impeding an investigation, which led to an administrative proceeding that resulted in Ogurek's remaining in segregation for six months. But an administrative appeal of Gabor's report resulted in its being expunged, on the ground that Gabor had both violated the procedure for issuing disciplinary, see 20 Ill. Admin. Code § 504.30, and failed to substantiate his charge against Ogurek. This suit followed.

During discovery Ogurek sought by motion the security video that Gabor had claimed to be the basis of his disciplinary action. The district judge ordered Gabor to respond within 17 days, which he didn't do, instead moving for summary judgment. The judge granted the motion, and dismissed the suit, before the video surfaced, in the mistaken

belief that Ogurek had presented no evidence in support of his claim. The district judge erred in refusing to compel production of the security video, which would have been the dispositive piece of evidence in this case. See *Diaz v. Davidson*, 799 F.3d 722, 724 (7th Cir. 2015); *Bryant v. City of Chicago*, 746 F.3d 239, 242–43 (7th Cir. 2014).

The First Amendment of course creates a right to "petition the Government [which by interpretation of the due process clause of the Fourteenth Amendment has been held to include state and local government] for a redress of grievances," and Ogurek's letter to the warden was such a petition. Gabor violated the amendment's right of redress if he based the disciplinary action that he instituted against Ogurek on information that he knew to be false. The video might vindicate Gabor's claim that Ogurek started the fight with the other inmate and thus was properly subject to disciplinary action, but Gabor's failure to produce the video suggests the contrary—that the video vindicates Ogurek's version of the fight. *Niehus v. Liberio*, 973 F.2d 526, 530–31 (7th Cir. 1992). The judge erred, moreover, in saying that Ogurek had presented no evidence in support of his claim—his assertion that he had not started the fight with the other inmate, and that Gabor had known this and was acting out of spite, was evidence.

Another panel of this court noted in a recent case that "if Meyer [a prison guard] set out to punish Herron [a prisoner] for his grievances, then a price has been attached to speech"; but continuing the panel said that "many decisions assume that essentially everything a prisoner says in the grievance system—if not everything a prisoner says to a guard—is protected by the First Amendment. … These decisions do not

discuss a parallel line of cases about grievances that public workers make about the conditions of their employment. That line of cases attempts to distinguish statements on topics of public importance (protected) from personal gripes (unprotected) and statements that disrupt the workplace (also unprotected)." *Herron v. Meyer*, 820 F.3d 860, 863–64 (7th Cir. 2016).

Yet the line of decisions criticized in *Herron* includes two earlier decisions of this court that are in tension with, yet are not cited in, that case. One is *Watkins v. Kasper*, 599 F.3d 791, 795 (7th Cir. 2010) ("the dynamics of the government's relationships with prisoner-employees and with public employees are too dissimilar to transfer the public concern test to the prison context"); the other is *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009) ("we conclude that a prisoner's speech can be protected even when it does not involve a matter of public concern"). No matter; an inmate's complaint of being assaulted and injured by another inmate and then framed by a guard to prevent the victim from obtaining any redress is not a "personal gripe"; it is therefore a violation of the Constitution under *Herron*'s rule and *a fortiori* under that of *Watkins* and *Bridges*, as well as of similar cases in other circuits cited in *Bridges*, *supra*, 557 F.3d at 551–52.

The grant of summary judgment in the defendant's favor was thus premature, and so we reverse the judgment dismissing the suit and remand the case to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED