*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NEIL NYBER, also known as NEIL NYBERG, REBECCA NYBERG, GLORIA STEINBRUNNER TRUST, JOHN SCHIMPF, DIANNA SCHIMPF, JOHN H. MACFARLANE, also known as JOHN H. MCFARLANE, NANCY M. MACFARLANE, also known as NANCY M. MCFARLANE, DOUGLAS COOPER, and JOANNE COOPER,

        Plaintiffs-Appellants,

v

CITY OF BATTLE CREEK, BATTLE CREEK CITY MANAGER, and JILL HUMPHREYS STEELE,

        Defendants-Appellants.

FOR PUBLICATION
February 11, 2026
1:47 PM

No. 369906
Calhoun Circuit Court
LC No. 2023-001855-CH

Before: O'BRIEN, P.J., and MURRAY and LETICA, JJ.

MURRAY, J.

Plaintiffs own homes adjacent to Lakewood Drive, a short dead-end road located in Battle Creek. They sued the city and several of its officials, arguing that the city could not discontinue maintenance and repair work on Lakewood Drive, even though public records show the road was abandoned by the Calhoun County Road Commission in 1965. In challenging the city's decision, plaintiffs invoked the highway-by-user statute, MCL 221.20. The trial court held that plaintiffs had standing to sue, but that the statute could not be used by private parties to compel a governmental unit to "accept" a road as public. We hold that plaintiffs had standing to bring this claim, and that the trial court prematurely decided whether plaintiffs could "force" the city to accept a road as public. We therefore vacate that part of the trial court's order, and remand for

-1-

further proceedings on that claim. However, we affirm the trial court's order granting defendants' motion for summary disposition of plaintiffs' First Amendment retaliation claim.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Lakewood Drive came into being with the plat of Willard Woods in September 1929, which dedicated all "the streets and alleys as shown on said plat . . . to the use of the public." At the time of dedication, Lakewood Drive was within Battle Creek Township. As noted, Lakewood Drive is a residential, dead-end road that extends about 600 feet in length by 22 feet 2 inches wide, until terminating a short distance before George B Place, a neighboring street. A fence runs along the unpaved ground between Lakewood Drive and George B Place, and there is a gate located at the end of Lakewood Drive.

In 1965, on the petition of the homeowners on Lakewood Drive, the Calhoun County Road Commission adopted a resolution formally abandoning Lakewood Drive, rendering it the private property of the adjacent property owners. Those property owners then agreed to an easement to allow them to maintain and repair the road. Almost two decades later in 1983, Battle Creek Township merged with the City of Battle Creek, causing Lakewood Drive to come within Battle Creek's territory. Since then, according to the complaint, Lakewood Drive has been continuously certified as a public street under Battle Creek's jurisdiction and has been subject to public use by pedestrians and motorists, particularly for access to the nearby Willard Beach Park. Battle Creek has maintained Lakewood Drive by providing snow plowing services, removing obstructions, conducting repairs, and installing new curbs and gutters.

Circumstances changed in late 2022, when City Manager Rebecca Fleury alerted plaintiffs by letter that Battle Creek had become aware of the 1965 Resolution and that the city would no longer provide repairs, maintenance, and snow removal for Lakewood Drive after May 1, 2023. Plaintiffs responded to Fleury, arguing that Lakewood Drive had become a public highway pursuant to MCL 221.20, because of the nearly 40 years of public use and maintenance.

City Attorney Jill Humphreys Steele responded in writing to plaintiffs, explaining the city's position that the mistaken maintenance of Lakewood Drive was not sufficient to make it a public road under the highway-by-user statute. Steele wrote that, if Battle Creek were to accept Lakewood Drive as a public road, then "the City Streets Department would require improvements to Lakewood Dr. . . . including, but not limited to, connecting Lakewood Drive through to George B Place." She also pointed out that all highways that are subject to the statute "shall be 4 rods in width"—which is 66 feet—so if Battle Creek accepted the road, "there is a distinct possibility that the road would need to be widened up to sixty-six feet because the City's usual road equipment is too large to be used on Lakeside [sic] Drive in its current condition."

Reinforcements were brought in by plaintiffs, as they hired an attorney, David E. Pierson, who provided his legal analysis as to why the elements of the highway-by-user statute had been satisfied. Steele disagreed with Pierson's legal analysis, and informed him that "a closer look at

---

[1] Plaintiffs did not appeal the trial court's order granting summary disposition of Count II of their complaint.

the City's GIS [Geographic Information Systems] map" showed that the city owned no portion of Lakewood Drive; the adjacent property owners owned it to the center of the road. She wrote, "The City has no authority or permission to undertake any activity on that road as it relates to maintaining or repairing the streets (except with regard to water main and sewer easements)."

In the meantime, one of the Lakewood Drive residents who wanted the road to remain private, contacted Fleury about her concerns if the road went public. Thereafter, Fleury sent an e-mail to plaintiffs, attaching Steele's letter, and stating:

> Based on [Steele]'s letter, effective immediately, the city continues to recognize Lakewood Drive as a private road, and effective immediately, we will not be providing any maintenance services, including, but not limited to[,] snow removal. This decision has been made since an examination of assessing and GIS records makes clear that individual property owners on Lakewood Drive own the center of the road with no rights to the city. Further, at least one of the property owners, who also has easement rights to the entire road, has made clear they want the road to remain private. If, after you read the city's letter, you still wish to meet, I am happy to have my office arrange it.

The parties did meet to further discuss the matter, but no resolution came from the meeting.

As a result, plaintiffs filed their complaint, asking the court to declare that Lakewood Drive had become a public road pursuant to the highway-by-user statute. Relevant to this appeal, plaintiffs also asserted a claim for damages under 42 USC 1983, on the basis that defendants had violated their First Amendment right to petition the government for the redress of grievances. Defendants responded by moving the trial court for summary disposition pursuant to MCR 2.116(C)(5) (lack of standing), (C)(7) (immunity provided by law), (C)(8) (failure to state a claim upon which relief can be granted), and (C)(10) (no genuine issue of material fact). Following a hearing on the motion, the trial court issued an opinion that granted defendants summary disposition of the highway by user claim pursuant to MCR 2.116(C)(8), and the First Amendment claim pursuant to both MCR 2.116(C)(8) and (C)(10).

## II. ANALYSIS

We "review[] de novo a trial court's decision on a motion for summary disposition." *Williamson v AAA of Mich*, 513 Mich 264, 269; 15 NW3d 546 (2024) (quotation marks and citation omitted). "A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019) (emphasis in original). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone. A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*. at 160 (citations omitted). See MCR 2.116(G)(5). "[O]nly factual allegations, not legal conclusions, are to be taken as true" when deciding a motion under MCR 2.116(C)(8). *Davis v Detroit*, 269 Mich App 376, 379 n 1; 711 NW2d 462 (2005). "[T]he mere statement of a pleader's conclusions, unsupported by allegations

-3-

of fact, will not suffice to state a cause of action." *ETT Ambulance Serv Corp v Rockford Ambulance, Inc*, 204 Mich App 392, 395; 516 NW2d 498 (1994).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. A court ruling on such a motion must consider affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. If the evidence fails to establish a genuine dispute regarding any material fact, then the moving party is entitled to judgment as a matter of law. [*Williamson*, 513 Mich at 269-270 (quotation marks and citations omitted).]

We also review de novo questions of statutory interpretation. *Id*. at 270. When interpreting a statute, our goal "is to discern and give effect to the Legislature's intent as expressed in the words of the statute." *Id*. (quotation marks and citation omitted).

## A. HIGHWAY BY USER

Plaintiffs first argue that the trial court erred by concluding that private parties may not bring a claim against a municipality under the highway-by-user statute, MCL 221.20. In arguing their respective positions, the parties disagree over the effect of two statutes, MCL 221.20 and MCL 221.20a, as well as our decision in *Donaldson v Alcona Co Bd of Co Rd Comm'rs*, 219 Mich App 718, 727 n 3; 558 NW2d 232 (1996).

We begin with the language of the statutes. MCL 221.20 sets forth how a road can become a public road, providing:

> All highways regularly established in pursuance of existing laws, all roads that shall have been used as such for 10 years or more, whether any record or other proof exists that they were ever established as highways or not, and all roads which have been or which may hereafter be laid out and not recorded, and which shall have been used 8 years or more, shall be deemed public highways, subject to be altered or discontinued according to the provisions of this act. All highways that are or that may become such by time and use, shall be 4 rods in width, and where they are situated on section or quarter section lines, such lines shall be the center of such roads, and the land belonging to such roads shall be 2 rods in width on each side of such lines.

Relatedly, MCL 221.20a grants townships the power to file a circuit court action to declare a road public, providing as follows:

> A township with the prior written consent of the board of county road commissioners and upon petition to the township board by 51% of the property owners whose frontage abuts a road may commence an action in circuit court to have the road determined to be a public highway and to determine the length and boundaries of the road. If the court finds that there has been public use of the road for at least 10 years and that public authorities have expended public money on the road, it shall enter an order that the road has become a public highway setting forth the length and boundaries of that public highway. If the court finds that the road

has not become a public highway, the township may in the same action acquire by purchase or condemnation in accordance with section 20h of this chapter the property rights of those owners who in the action claim that the road is not a public highway and the court shall enter its order that the road is a public highway and set forth the length and boundaries of that public highway.

This Court explained the purpose of the highway-by-user statute, and how a case can be established under the statute:

> The highway-by-user statute treats property subject to it as impliedly dedicated to the state for public use. 'Highway by user' is a term that is used to describe how the public may acquire title to a highway by a sort of prescription [when] no formal dedication has ever been made. Establishing a public highway pursuant to the highway-by-user statute requires four elements: (1) a defined line, (2) that the road was used and worked on by public authorities, (3) public travel and use for ten consecutive years without interruption, and (4) open, notorious, and exclusive public use. The burden of proof rests with the governmental agency claiming a highway by user. If all four elements are established, MCL 221.20 raises a rebuttable presumption that the road is four rods, or 66 feet, wide. [*Villadsen v Mason Co Rd Comm*, 268 Mich App 287, 292-293; 706 NW2d 897 (2005) (quotation marks and citations omitted), aff'd on other grounds 475 Mich 857 (2006).]

The question on appeal is not whether plaintiffs can establish their claim on the merits, as the trial court never reached that issue. Nor can there be any doubt that plaintiffs have standing to bring this claim, as *Donaldson*, 219 Mich App at 723-724, held that similar homeowners had a sufficient personal stake, unique from that of the general public, to have standing:

> Plaintiffs in this case are not members of the general public but, instead, own property along the contested road. They need the road to get to their homes and, if it is not maintained by the road commission, they will have to undertake that burden. These interests are unique to plaintiffs and not shared by members of the general public. In fact, plaintiffs' interests are contrary to the interests of the general public. If the road is maintained by the road commission, then it is the general public that must pay the maintenance expense. The road offers little benefit to other members of the public because it is a dead-end road that leads to only three houses. Because plaintiffs have a sufficient personal stake in the outcome of this litigation that differs from that of the general public, plaintiffs have standing to bring this action.

But what the trial court relied upon from *Donaldson*, and what the parties continue to spar over on appeal, is a closing footnote that put into question whether the highway-by-user statute is available for private individuals to sue the government to have a private road declared public.

After concluding that the plaintiffs had standing, the *Donaldson* Court held that plaintiffs failed to establish a claim under the statute, affirming the grant of the defendant's motion for

summary disposition. But before moving on to another issue, the Court dropped a footnote, questioning whether the highway-by-user statute could apply in a case seeking to force a government agency to accept a road as a public highway:

> However, we also question whether the statute could ever be appropriately applied, in effect, to force a public authority to accept a road as a public highway. We found no precedents in which the statute was so applied. As the trial court and the parties in the present case acknowledged, the statute is generally used by public authorities to designate roadways as public highways, over the objections of adjoining property owners who would rather have the roadways remain private roads. The statutory context of the highway by user statute suggests that it should not be used to foist public highway responsibilities upon road commissions without their consent. A township may begin proceedings to declare a road a public highway only "with the prior written consent of the board of county road commissioners" MCL 221.20a, and roads determined to be public highways must be improved by the township to standards established by the county road commission, MCL 221.20g. Further, our Supreme Court has long recognized that it is "necessary to prevent the public from becoming responsible for land that it did not want or need" and that "it is . . . fundamental that private property cannot be forced on a public authority without its consent." *Kraus v Dep't of Commerce*, 451 Mich 420, 424, 429; 547 NW2d 870 (1996). [*Donaldson*, 219 Mich App at 727 n 3 (some citations omitted).]

This footnote was, of course, classic dicta, as the highway by user claim had already been resolved on the merits, and so anything said afterwards on that claim was unnecessary to a resolution of the matter. See *Auto Owners Ins Co v Seils*, 310 Mich App 132, 160 n 7; 871 NW2d 530 (2015). But it was understandable that the trial court would look to that footnote, and the subsequent unpublished opinion from this Court endorsing that conclusion, as those are the only two decisions addressing that issue.

What the *Donaldson* Court said in that footnote may very well be accurate, for it has long been established that dedicating a road as a public highway requires "accept[ance] by the public authorities having jurisdiction as a public highway." *Irving v Ford*, 65 Mich 241, 249; 32 NW 601 (1887). And clearly, consent is not present here. But the government can also implicitly accept a road as a highway by user by maintaining it enough to keep the road in reasonably passable condition. *Villadsen*, 268 Mich App at 296. In the end, however, we need not resolve that issue in this appeal. After all, this claim may have the same fate as the claim did in *Donaldson*, and if so, whether plaintiffs could "force" the city to accept Lakewood Drive as a public road would not have to be resolved. Of course, if plaintiffs do meet their burden, the issue will be ripened for the trial court to resolve in the first instance.

Therefore, we conclude that the trial court erred by granting defendants summary disposition on this basis, and at this stage, pursuant to MCR 2.116(C)(8).

## B. FIRST AMENDMENT RETALIATION AND QUALIFIED IMMUNITY

Plaintiffs also challenge the trial court's conclusion that (1) they failed to allege sufficient facts to state a First Amendment retaliation claim against Battle Creek, (2) that Steele and Fleury's

conduct did not constitute adverse action, and (3) that Steele and Fleury were entitled to qualified immunity. The factual allegations for this claim are premised upon the exchange of letters between plaintiffs (and their representative) and Steele and Fleury. As explained below, the contents of the letters do not support a First Amendment violation.

We engage in a de novo review of (1) the trial court's decision to grant summary disposition, *Williamson*, 513 Mich at 269, (2) issues of constitutional law, *J & J Constr Co v Bricklayers & Allied Craftsmen, Local 1*, 468 Mich 722, 729; 664 NW2d 728 (2003), and (3) whether defendants are entitled to qualified immunity, *Morden v Grand Traverse Co*, 275 Mich App 325, 340; 738 NW2d 278 (2007).[2]

The First Amendment provides protection from government interference for many fundamental rights, including the right "to petition the Government for a redress of grievances." US Const, Am I. "The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives . . . ." *Borough of Duryea, Pa v Guarnieri*, 564 US 379, 388; 131 S Ct 2488; 180 L Ed 2d 408 (2011). "The protections provided by the First Amendment, including the Petition Clause, have been extended to the states by the Fourteenth Amendment." *J & J Constr Co*, 468 Mich at 729.

42 USC 1983 is the statutory provision utilized to bring claims alleging a constitutional violation, providing in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

" '[I]n any action under § 1983, the first step is to identify the exact contours of the underlying right said to have been violated.' There must be an underlying violation of the federal constitution or a federal law, in order for a § 1983 claim to lie." *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 196; 761 NW2d 293 (2008), quoting in part, *Co of Sacramento v Lewis*, 523 US 833, 841 n 5; 118 S Ct 1708; 140 L Ed 2d 1043 (1998).

---

[2] Plaintiffs argue that the trial court granted defendants' motion under MCR 2.116(C)(8), and because they adequately alleged the elements for a First Amendment retaliation claim, we must reverse. The trial court granted defendants' motion under (C)(8) on the qualified immunity defense, but granted summary disposition under MCR 2.116(C)(10), when alternatively addressing the merits of the First Amendment claim. And, in support of that part of the motion, defendants attached the relevant letters to the motion. So, our review is not limited to the standards under MCR 2.116(C)(8) when considering the merits. But even if the trial court did exclusively rely on that subrule, we could invoke the well-seasoned rule that "[a]n order granting summary disposition under the wrong subrule may be reviewed under the correct one." *Energy Reserves, Inc v Consumers Power Co*, 221 Mich App 210, 216; 561 NW2d 854 (1997).

"A cause of action under § 1983 is stated [when] a plaintiff shows (1) that the plaintiff was deprived of a federal right, and (2) that the defendant deprived the plaintiff of that right while acting under color of state law." *Davis v Wayne Co Sheriff*, 201 Mich App 572, 576-577; 507 NW2d 751 (1993). "In order to establish such a claim against a municipality or an agency thereof, the plaintiff must show that a policy or custom tantamount to a deliberate indifference for the constitutional rights of others actually caused the violation." *Id*. at 577. Deliberate indifference requires more than mere negligence. *Id*.

Qualified immunity is a defense for individuals against claims for damages under § 1983 for alleged violations of federal rights, *Morden*, 275 Mich App at 340, and " 'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Holeton v Livonia*, 328 Mich App 88, 102; 935 NW2d 601 (2019), quoting *Pearson v Callahan*, 555 US 223, 231; 129 S Ct 808; 172 L Ed 2d 565 (2009). Qualified immunity "is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v Forsyth*, 472 US 511, 526; 105 S Ct 2806; 86 L Ed 2d 411 (1985) (emphasis in original).

Whether an official is entitled to qualified immunity is a two-prong inquiry:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right. [*Pearson*, 555 US at 232 (quotation marks and citations omitted).]

## 1. CONSTITUTIONAL VIOLATION

It is clear, and uncontested, that defendants acted under color of law in their interactions with plaintiffs. We therefore turn to whether plaintiffs created an issue of material fact that defendants retaliated against them for exercising their First Amendment right to petition the government for the redress of grievances.

To establish their First Amendment retaliation claim, plaintiffs must show (1) that they engaged in constitutionally protected conduct, (2) that [the] defendants took adverse action against them that would "deter a person of ordinary firmness from continuing to engage in that conduct," and (3) that the adverse action was caused by the plaintiffs' exercise of their constitutional rights. *King v Zamiara*, 680 F3d 686, 694-695 (CA 6, 2012).

Regarding the first element, constitutionally protected conduct, plaintiffs' communications with defendants, both directly and by engaging Pierson to provide his legal opinion to defendants, clearly involves plaintiffs expressing their concerns about proposed government decisions; thus, their conduct was protected by the Petition Clause of the First Amendment. See *Evers v Custer Co*, 745 F2d 1196, 1204 (CA 9, 1984) (activity of property owners who urged county officials not to close what they believed was a public road "falls within the first amendment's protection of the

right to petition the government for redress of grievances"), and *Ogurek v Gabor*, 827 F3d 567, 568 (CA 7, 2016) (recognizing that a letter to a public official is a petition under the First Amendment's petition clause).

Regarding the second element, any adverse action that creates more than a *de minimis* negative consequence can violate First Amendment rights. *Cooperrider v Woods*, 127 F4th 1019, 1037 (CA 6, 2025). Because "[t]he adverse nature of a particular action will depend on context," "[w]hether an alleged adverse action is sufficient to deter a person of ordinary firmness is generally a question of fact." *Id.* (quotation marks, citations, and alterations omitted). At the same time, however, "[n]othing in the First Amendment or in [the United States Supreme] Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." *Minnesota State Bd for Community Colleges v Knight*, 465 US 271, 285; 104 S Ct 1058; 79 L Ed 2d 299 (1984). See also *We the People Foundation, Inc v United States*, 376 US App DC 117, 120; 485 F3d 140 (2007) (rejecting the plaintiffs' contention "that they have a right under the First Amendment to receive a government response to or official consideration of a petition for a redress of grievances"); *Gillette Commercial Operations North America & Subsidiaries v Dep't of Treasury*, 312 Mich App 394, 435; 878 NW2d 891 (2015).

Plaintiffs allege that Steele's statement in her letter to plaintiffs that the city *might* widen Lakewood Drive to 66 feet or extend the road, which would require the removal of over a dozen mature trees, was a threat intended to "deter or silence" plaintiffs' protected speech. We see it differently, as the challenged correspondence simply articulated the potential legal ramifications of Lakewood Drive becoming a public roadway under MCL 221.20. Government officials are not required to, but certainly can and often do, provide responses to citizen letters, outlining the government's position on the particular issue. And here, Steele was merely apprising plaintiffs of the city's legal position and what actions the city may have to take if Lakewood Drive became a public highway, which was consistent with the statutory presumption that a public road is 66 feet wide. *Villadsen*, 268 Mich App at 292-293. No person of ordinary firmness would be deterred in the exercise of their rights by being told their government's reasonable position regarding what the law requires. This is even more so here, where the city offered to, and did, meet with plaintiffs to further discuss the matter.

Our conclusion is in line with *Hornbeak-Denton v Myers*, 361 Fed Appx 684 (CA 6, 2010), which also involved a First Amendment retaliation claim regarding a piece of real property. There the court held, with retired Justice Sandra Day O'Connor writing for the court, that defendants' threats of litigation if plaintiffs attempted to sell disputed land, were insufficient to establish the adversity prong of a retaliation claim:

> The only adverse actions Appellants alleged were TWRA's threats of legal process to defend its good-faith claims to the disputed property. Appellants stress that on one occasion, there was a verbal threat not to simply settle the property dispute, but to sue Appellants "for fraud if [they] attempted to sell this land." We have stated that "[m]ere threats . . . are generally not sufficient to satisfy the adverse action requirement." *Mitchell v Vanderbilt Univ*, 389 F3d 177, 182 (CA 6, 2004). This is not a hard and fast rule, as there are no doubt stand-alone threats that would deter a person of ordinary firmness from exercising their protected rights. We do

not apply the adverse action inquiry mechanically, as "each step of the analysis is flexible enough to take into account the various contexts in which retaliation claims might be made." *Thaddeus-X* [*v Blatter*], 175 F3d [378 (CA 6, 1999)] at 395. But in the context of this case, where the alleged threats were made by repeated offers and attempts to resolve the underlying property dispute, we have little doubt that they would not deter a person of ordinary firmness from criticizing TWRA's permit process. We adhere to the general rule that bare threats are insufficient to constitute adverse actions, and uphold the district court's dismissal of Appellants' First Amendment retaliation claim. [*Hornbeak-Denton*, 361 Fed Appx at 689.]

Plaintiffs failed to create a genuine issue of material fact on their First Amendment retaliation claim against Steele because they failed to establish an issue of fact as to whether she took adverse action against them.

As to Fleury, plaintiffs allege that her decision to discontinue services to Lakewood Drive on February 24, 2023, instead of the original date of May 1, 2023, was also in retaliation for their protected conduct. The trial court concluded that this case was "nothing more than a property dispute and threats made in conjunction with an offer to meet with the plaintiffs to discuss the matter," which would not deter a person of ordinary firmness from continuing to exercise their First Amendment rights, particularly in light of the fact that plaintiffs met with Fleury afterward. Although this assessment was correct as to Steele, plaintiff raised an issue of material fact as to Fleury's conduct.

Fleury's original promise to continue services to Lakewood Drive, including snowplowing services, was meant to provide plaintiffs time to arrange for replacement services. Fleury's subsequent decision to terminate services in February left plaintiffs without, amongst other things, snowplowing services which, undoubtedly, constitutes more than a *de minimis* negative consequence. See *Cooperrider*, 127 F4th at 1037. Although Fleury has a factual explanation for this change of position, for purposes of summary disposition, we conclude that reasonable minds could differ as to whether Fleury took adverse action against them.

For much the same reason, we conclude that there was a material factual dispute on causation, as there is no dispute that Fleury decided to discontinue services to Lakewood Drive. Plaintiffs alleged that was caused by their protected conduct, and while defendants assert that Fleury's decision was motivated by a desire to not trespass against Kelly Moody, one of the owners of Lakewood Drive who had expressed to the city her desire that Lakewood Drive remain a private road, at this stage plaintiffs raised an issue of fact over whether Fleury had retaliatory intent, which is normally a question for the jury. See *Johnson v Detroit Edison Co*, 288 Mich App 688, 696; 795 NW2d 161 (2010). Therefore, at this point plaintiffs sufficiently established a factual dispute on their First Amendment retaliation claim with respect to Fleury's conduct. See *Mack v Warden Loretto FCI*, 839 F3d 286, 297 (CA 3, 2016).

Lastly, as to plaintiffs' claim against the City itself, plaintiffs' complaint alleged simply that Battle Creek "acting under color of state law, authorized, tolerated, ratified, permitted, or acquiesced in the creation of policies, practices, and customs, establishing a de facto policy of deliberate indifference to individuals such as Plaintiffs in the exercise of their First Amendment right." Plaintiffs' allegations against Battle Creek are a "mere statement of [plaintiffs']

conclusions, unsupported by allegations of fact, [and do] not suffice to state a cause of action." *ETT Ambulance Serv Corp*, 204 Mich App at 395. Therefore, plaintiffs failed to state a First Amendment retaliation claim against the city.

## 2. CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS

Although plaintiffs pleaded and raised material factual disputes against Fleury, they failed to sufficiently plead that their asserted constitutional rights were clearly established. Fleury was therefore entitled to qualified immunity from plaintiffs' claim.

"[F]or a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v Hughes*, 584 US 100, 104; 138 S Ct 1148; 200 L Ed 2d 449 (2018) (quotation marks and citation omitted). Courts are "not to define clearly established law at a high level of generality." *Id*. (quotation marks and citation omitted). When a plaintiff's constitutional right is clearly established by caselaw, "the [qualified] immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his [or her] conduct"; however, an official is entitled to qualified immunity if the official can prove that she "neither knew nor should have known of the relevant legal standard. . . ." *Harlow v Fitzgerald*, 457 US 800, 818-819; 102 S Ct 2727; 73 L Ed 2d 396 (1982). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela*, 584 US at 104 (quotation marks and citation omitted).

The clearly established prong of the qualified immunity inquiry sets a high standard, and the United States Supreme Court has "aggressively enforced qualified immunity." *Morden*, 275 Mich App 340-341. Although qualified immunity is classified as an affirmative defense, "a plaintiff has the burden of overcoming the assertion of qualified immunity at the pretrial stage[.]" *Lavigne v Forshee*, 307 Mich App 530, 542; 861 NW2d 635 (2014).

Plaintiffs argue that their constitutional right to be free from retaliation for exercising their First Amendment right to petition was clearly established. Plaintiffs rely on *Holzemer v Memphis*, 621 F3d 512, 527 (CA 6, 2010), where the court said:

> We find that the case law of this court and of the Supreme Court demonstrates that the right to petition a local, elected representative for assistance in dealing with local government agencies was clearly established at the time that the relevant events took place and that a reasonable local official would have known that retaliating against a citizen exercising that right is unlawful.

*Holzemer* is factually distinct from this case. In *Holzemer*, 621 F3d at 515-516, the plaintiff owned and operated a motorized rickshaw taxi service in Memphis, Tennessee. A police sergeant with the Memphis Police Department Permit Office issued the plaintiff parking permits for his taxi service, but the sergeant said that the permit did not allow the plaintiff's taxis to pick up or drop off customers in front of the Memphis Pyramid Arena. *Id*. at 516. Later, the plaintiff happened to strike up a conversation with a Memphis City Councilman who asked the plaintiff how business was going; the plaintiff complained about the parking restrictions. *Id*. The Councilman said that he would look into the matter, and soon thereafter the plaintiff received a

call from the Memphis Police Department that told him his taxis could operate in front of the Pyramid. *Id.* The sergeant from the Permit Office retaliated against the plaintiff over the next few years by refusing to renew permits, imposing different parking restrictions on the taxis, and launching an investigation into the plaintiff's business for allegedly altering serial numbers on the taxis which resulted in the taxis being seized and destroyed. *Id.* The charges arising from that investigation were dropped because the relevant statute did not apply to motorized rickshaws. *Id.* at 517. The sergeant admitted that she jeered at the plaintiff when his taxis were seized by saying "you are officially shut down" and that the plaintiff "did this to himself." *Id.*

Certainly, the sergeant's retaliatory conduct in *Holzemer* was so plain that any reasonable police officer should have known that it violated the plaintiff's clearly established constitutional rights. However, that is not the case here. Plaintiffs draw the contours of their right to be free from retaliation for the exercise of their right to petition at too high a level of generality. See *Kisela*, 584 US at 104. By way of example, in *Reichle v Howards*, 566 US 658, 665; 132 S Ct 2088; 182 L Ed 2d 985 (2012), "the right in question [was] not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that [was] otherwise supported by probable cause."

Therefore, the question is not whether plaintiffs have a clearly established right to be generally free from retaliation for petitioning the government. Instead, it is whether they had a clearly established right to not have the date services were discontinued moved while they and the city continued to discuss the dispute. See, e.g., *Mirabella v Villard*, 853 F3d 641, 653 (CA 3, 2017) (defining the question as whether "the right to be free from a retaliatory restriction on communication with one's government, when the plaintiff has threatened or engaged in litigation against the government" was clearly established). Plaintiffs provide no caselaw that clearly establishes this more specific right, and we have found no Supreme Court decision, or a uniform conclusion establishing such a right amongst the federal circuit courts. *Taylor v Barkes*, 575 US 822, 826; 135 S Ct 2042; 192 L Ed 2d 78 (2015). Accordingly, we agree with the trial court's conclusion that no reasonable city manager would know or should have known that the actions in this case were unlawful. See *Ashcroft v al–Kidd*, 563 US 731, 743; 131 S Ct 2074; 179 L Ed 2d 1149 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law.") (internal quotation marks omitted). Because the issue of qualified immunity is distinct from the merits of plaintiffs' § 1983 claim, the existence of any genuine issues of fact regarding Fleury's motivations did not preclude granting Fleury summary disposition on the basis of qualified immunity. See *Morden*, 275 Mich App at 342, and *Mirabella*, 853 F3d at 652.

For these reasons, we vacate the trial court's order granting defendants' motion for summary disposition of plaintiffs' highway-by-user claim and remand for further proceedings. We affirm the trial court's order dismissing plaintiffs' § 1983 claim. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Colleen A. O'Brien
/s/ Anica Letica

-12-